

**SO ORDERED.**

**SIGNED this 15 day of March, 2013.**

_____
**James D. Walker, Jr.
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 12-11169-JDW |
| NOEL W. WILLIAMS, SR. and | ) | |
| KAY C. WILLIAMS, | ) | |
| | ) | |
| DEBTORS. | ) | |
| | ) | |
| NOEL W. WILLIAMS and | ) | ADVERSARY PROCEEDING |
| KAY C. WILLIAMS, | ) | NO. 12-1027 |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| DEFENDANT. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Plaintiffs:    Wesley J. Boyer
                   355 Cotton Avenue
                   Macon, Georgia 31201

For Defendant:     Barbara Parker
                   U.S. Attorney's Office
                   Post Office Box 1702
                   Macon, Georgia 31202-1702

                   Thomas Ford Koelbl
                   U.S. Department of Justice
                   Post Office Box 14198
                   Ben Franklin Station
                   Washington, D.C. 20044

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs' complaint to determine secured status and strip lien on real estate. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(K). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

## Background

The parties stipulate to the following facts: Defendant, the Internal Revenue Service, filed a notice of federal tax lien against Debtor-Plaintiffs on May 21, 2012. Debtors filed a Chapter 7 petition on August 13, 2012. On Schedule A, Debtors listed their only real property as their residence, worth $150,000 and subject to debts of $300,000. On Schedule B, they listed personal property worth $46,500. On Schedule C, they claimed exemptions totaling $29,200 in their personal property.

On October 12, 2012, the Chapter 7 trustee filed a report of no assets, reporting no nonexempt assets were available for distribution to creditors. No proofs of claim were filed by any creditors, including the IRS. However, Debtors' Schedule E lists the IRS as a creditor holding a priority claim in the amount of $86,162.47. Debtors received a discharge on November 16, 2012. Debtors filed a complaint seeking a determination that the IRS's tax lien against their residence is void. The complaint alleges the residence is worth $210,000 and is encumbered by a first priority lien in favor of Wells Fargo in the amount of $237,564 and a second priority lien in favor of the IRS in the amount of $77,588.51 plus interest.

The parties filed cross-motions for summary judgment. The Court held a hearing on the motions on January 30, 2013. After considering the facts and the legal arguments, the Court will deny Debtors' motion for summary judgment and grant the IRS's motion for summary judgment.

### Conclusions of Law

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, incorporated by Federal Rule of Bankruptcy Procedure 7056. Rule 56(a) provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this case, the parties agree to all material facts; therefore, the Court need only consider application of the law.

At issue is whether Debtors may strip off a wholly unsecured junior lien on their residence. In Dewsnup v. Timm, 502 U.S. 410, 112 S. Ct. 773 (1992), the Supreme Court held that a Chapter 7 debtor could not reduce or "strip down" a partially secured first lien to the value of the creditor's interest in the collateral. However, the Eleventh Circuit recently held that Dewsnup does not apply when the lien is wholly unsecured. McNeal v. GMAC Mortg., LLC, 477 Fed. Appx. 562 (11th Cir. 2012) (unpublished).[1] Instead, the circuit court's pre-Dewsnup decision of Folendore v. U.S. Small Business Administration (In re Folendore), 862 F.2d 1537, (11th Cir. 1989), which allows strip off of a wholly unsecured lien, controls.

All three cases turn on the interpretation of 11 U.S.C. § 506(d), which provides:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless–

---

[1] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

>...
>    (2) such claim is not an allowed secured claim due only to
> the failure of an entity to file a proof of such claim under section
> 501 of this title.

11 U.S.C. § 506(d).

In Folendore, the SBA held perfected security interests in the debtors' real and personal property. Two senior creditors held liens in the same property. The claims of the senior lienholders exceeded the value of the collateral. As a result, the parties agreed the SBA held an unsecured claim. The debtors sought to void the SBA's lien under 11 U.S.C. § 506(d). 862 F.2d at 1538.

The court first determined that the SBA's lien was unsecured under § 506(a),[2] because the senior liens exceeded the value of the collateral. Id. It further concluded the SBA's claim was allowed because it had filed a proof of claim. Id. Because the SBA's claim was unsecured, the court held the debtors could void its lien under § 506(d). Id. Thus, Folendore stands for the proposition that § 506(d) may be invoked to strip off a wholly unsecured lien.

The court went on to consider the effect of lienstripping in bankruptcy compared to the SBA's rights outside of bankruptcy.

> While it is true that the Folendores might in the future pay off the
> mortgages on the property, at this moment the banks could
> foreclose on the property and cut out the SBA and the Folendores
> completely. The SBA admits the banks' power to foreclose and
> annihilate the SBA lien. The SBA presumably hopes that sometime
> in the future the Folendores will have equity in the property which
> could be attached by the SBA. The SBA's position is self-

---

[2] The version of § 506(a) applicable in Folendore provided as follows: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." 11 U.S.C. § 506(a) (1978).

5

> defeating. It simply provides an incentive for the Folendores to
> abandon the property. There is no reason the Folendores should
> remain on a piece of property on which the SBA can attach any
> equity they manage to generate. They, and any other post-discharge
> possessors of real property, would be far better off finding
> unencumbered property upon which to start their financial life
> afresh. This, of course, would leave a creditor like the SBA with
> nothing, which is exactly what section 506(d) on its face says it
> has.

Id. at 1540 (internal footnotes omitted).

Three years after Folendore, the Supreme Court decided Dewsnup. The Court began by acknowledging "the difficulty of interpreting [§ 506] in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day." 502 U.S. at 416-17, 112 S. Ct. at 778. The facts before the Court involved a Chapter 7 debtor's attempt to use § 506(d) to strip down[3] a partially secured creditor's lien to the value of its interest in the collateral. Id. at 413, 112 S. Ct. at 776.

The debtor argued that § 506(a) and § 506(d) should be read together to allow the strip down. Id. at 414-15, 112 S. Ct. at 776-77. Section 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in
> which the estate has an interest ... is a secured claim to the extent
> of the value of such creditor's interest in the estate's interest in
> such property ... and is an unsecured claim to the extent that the
> value of such creditor's interest ... is less than the amount of such
> allowed claim.

11 U.S.C. § 506(a). Section 506(d) provides that a lien is void to the extent it secures a claim that is not an "allowed secured claim." Thus, according to the debtor, the lien should be void as to the unsecured portion of the creditor's claim. 502 U.S. at 414-15, 112 S. Ct. at 776-77. Any other

---

[3] "Strip down" refers to partial avoidance of a lien; "strip off" refers to avoidance of the lien in its entirety, as occurred in Folendore.

interpretation would "eliminat[e] ... an undersecured creditor's ability to participate in the distribution of the estate's assets." Id. at 415, 112 S. Ct. at 777. The creditor argued that §§ 506(a) and (d) serve separate functions: subsection (a) classifies claims "at the time of distribution of the estate to ensure fairness to unsecured claimants"; subsection (d) applies at the time of foreclosure and serves "no bankruptcy distributional purpose" when the trustee has abandoned the property. Id.

The Court rejected both the debtor and creditor's arguments in favor the United States's position.[4] The phrase "allowed secured claim" in § 506(d) "refer[s] to any claim that is, first, allowed, and, second, secured." Id. This interpretation gives § 506(d) "the simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed." Id. at 415-16, 112 S. Ct. 777. Thus, § 506(d) does not apply to any creditor holding a lien in collateral unless that creditor's claim has not been allowed. Id. The Court noted that if it were "writing on a clean slate, we might be inclined to agree with the [debtor] that the words 'allowed secured claim' must have the same meaning in § 506(d) as in § 506(a)." Id. at 417, 112 S. Ct. at 778. However, the Court was not persuaded that "Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected." Id. Outside of bankruptcy, the creditor would retain its lien until foreclosure, which allows the creditor to benefit from any appreciation in the value of the property and reflects the bargained-for exchange between the debtor and the secured creditor. Id. If the Court allowed the debtor to strip down the lien, any such appreciation would accrue to the benefit of the debtor or unsecured creditors, "who had nothing to do with the mortgagor-mortgagee bargain." Id. Based on the Court's interpretation of § 506(d), the debtor

---

[4] This position was also adopted as an alternative argument by the creditor.

could not strip down the undersecured creditor's lien. Id.

In McNeal, the Eleventh Circuit considered the scope of Dewsnup. The Chapter 7 debtor owned a house subject to two liens. The debtor sought to strip off the junior lien, which was wholly unsecured. 477 Fed. Appx. at 563. The court concluded that Folendore, rather than Dewsnup controlled. Id. at 564. Thus, because the junior lien was wholly unsecured, the debtor could strip it off. Id.

In reaching its conclusion the court pointed out that under its "prior panel precedent rule, a later panel may depart from an earlier panel's decision only when the intervening Supreme Court decision is clearly on point." Id. (internal quotations and citations omitted). Dewsnup was not clearly on point because it involved a strip down of a partially secured lien rather than the strip off of a wholly unsecured lien at issue in Folendore. Id. The court acknowledged Dewsnup's apparent rejection of the plain language approach adopted by Folendore. Id. But, again, the conflict in reasoning did not justify a departure from the holding in Folendore, when the issue of strip off was not before the Court in Dewsnup. Id.

Since the McNeal decision, only one bankruptcy judge in the Eleventh Circuit has published a decision on a Chapter 7 debtor's attempt to strip off a wholly unsecured lien. In re Bertan, No. 11-27057-BKC-AJC, 2013 WL 216231 (Bankr. S.D. Fla. Jan. 18, 2013) (Cristol, J.). In Bertan, the court noted that McNeal is unpublished and thus without precedental value. Id. at *2. It nevertheless followed McNeal:

> While this Court believed the reasoning in Dewsnup was controlling under the circumstances presented in the case, it has come to understand, through McNeal, that the Eleventh Circuit Court of Appeals does not believe it is. Moreover, upon further consideration, such a ruling seems to make good sense. The

8

> Creditor has no interest in the subject Property due to the senior mortgage and is not therefore prejudiced as a result of [an order voiding its lien.]

Id.

This Court, too, will follow McNeal, even though the Court is persuaded McNeal was wrongly decided. McNeal and Folendore rely on application of § 506(a) prior to application of § 506(d) to void the wholly unsecured lien. However, § 506(a) serves no function in a no-asset Chapter 7 case. Logically, it should only apply when the case provides a distribution to unsecured creditors.[5] In such circumstances § 506(a) determines the extent to which an undersecured creditor will participate in the distribution. Nevertheless, the Eleventh Circuit has authorized strip off of a wholly unsecured claim pursuant to § 506(d). Although McNeal is not binding, the Court cannot simply ignore a decision of the Eleventh Circuit, especially one that holds that a prior published (and therefore precedental) decision remains good law. Therefore, the status of the IRS's lien determines whether Dewnsup applies or McNeal applies. If the IRS's lien is partially secured, Dewsnup prohibits strip down. If the IRS's lien is fully unsecured, Debtor's may rely on McNeal to void the lien.

Debtors' contend that the IRS lien is fully unsecured as to the residence while acknowledging that it attaches to the personal property. The IRS argues its lien is partially secured because of the value available in the personal property, citing Hoekstra v. U.S. (In re

---

[5] The opinion in Dewsnup does not reveal whether or not assets were available for distribution. The Supreme Court briefs are similarly opaque. However, the creditor stated that based on the events in the case it appeared no distribution would be made. Dewsnup v. Timm, 1991 WL 521263, United States Supreme Court Respondent's Brief, at *11 n.8. If assets were available for unsecured creditors, this Court would also consider Dewsnup to be wrongly decided.

Hoekstra), 255 B.R. 285 (E.D. Va. 2000), in support of its position.

Hoekstra is nearly identical to this case. The debtors owned a townhouse subject to four liens, including a federal tax lien in third position. The first two liens exceeded the value of the townhouse, such that the tax lien was wholly unsecured. However, the tax lien also applied to all the debtors' personal property. The debtors filed a no-asset Chapter 7 case and sought to strip off the tax lien from the townhouse. Id. at 286-87. Not only were the facts similar to this case, the Eastern District of Virginia even had a district court level analogue to McNeal in the case of Yi v. Citibank (Maryland), N.A., 219 B.R. 394 (E.D. Va. 1998), which allowed strip off of wholly unsecured liens in Chapter 7, notwithstanding Dewsnup.[6] The question in Hoekstra was whether Dewsnup or Yi applied to the tax lien. Id. at 289. The court ruled that "[b]ecause Debtors seek to avoid a portion of a lien that still has value in underlying collateral, this case presents a 'strip down' situation" controlled by Dewsnup. Id. at 290.

To reach its conclusion, the court rejected the rationale of the bankruptcy court, which had treated the tax lien "as distinct and individual liens as to each component of property underlying the lien." Id. Thus, the lien could be avoided as to one item of property without affecting the liens on other property. Id. The district court found the bankruptcy court's reasoning to be contrary to the language of 26 U.S.C. § 6321, which authorizes the tax lien: "'If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or

---

[6] Yi, which involved a consensual lien rather than a tax lien, has since been effectively overruled by Ryan v. Homecomings Financial Network, 253 F.3d 778 (4th Cir. 2001), which held that a wholly unsecured *consensual* lien cannot be stripped off in a Chapter 7 case. Id. at 782.

10

personal, belonging to such person.'" 255 B.R. at 290 (quoting 26 U.S.C. § 6321). The court found this language "makes clear that the value of a federal lien for taxes is the sum of all the property that is subject to the lien." Id. The court focused on the statute's use of the singular "lien" as opposed to the plural "liens." Id. at 290-91. The court bolstered its position by reference to case law that similarly used the singular "lien" when describing a federal tax lien. Id. at 291 (citing Mulligan v. United States, 234 B.R. 229, 232 (Bankr. D.N.H. 1999)). Because the debtors' personal property retained unencumbered value, the court concluded "a component of Creditor's lien, as against the Townhouse, is wholly unsecured, but the federal tax lien is still partially secured by Debtors' personal property. Because there remains 'recourse to collateral' underlying the United States' federal tax lien, the lien is not void." Id. at 291.

At least one court has rejected Hoekstra's theory of an indivisible tax lien. Johnson v. IRS (In re Johnson), 386 B.R. 171 (Bankr. W.D. Pa. 2008), aff'd, 415 B.R. 159 (W.D. Pa. 2009)). Johnson involved a Chapter 11 debtor with a federal tax lien against his personal property and in third position on his residence. Only the personal property retained any value to which the lien could attach. Therefore, the debtor filed an adversary proceeding to strip off the tax lien from his residence. 386 B.R. at 172-73. The IRS opposed the strip off on the ground that the debtor may not decide "which of his property is subject to the lien" after the lien has been valued. Id. at 179.

The court concluded that lienstripping is permissible in Chapter 11 and that Dewsnup is limited to Chapter 7 cases. Id. at 175-76 (citing 11 U.S.C. §§ 1111(b), 1123(b)(5)). However, in deciding whether the nature of an IRS lien exempts it from lienstripping, the court rejected Hoekstra's conclusion that a tax lien is "inviolable." Id. at 179. The court pointed out that "even the IRS does not treat federal tax liens in the monolithic and indivisible manner that it urges this

11

Court to follow." Id. at 180. To the contrary, both the Internal Revenue Code and the IRS's own regulations authorize the discharge of a tax lien as to any property of no value to the United States due to the existence of senior liens. Id. (citing 26 U.S.C. § 6325(b) and 26 C.F.R. § 301.6325-1(b)(2)). "Given this reality, it would make no sense to deny the Debtor relief in this case based solely on a fiction the IRS itself does not consistently follow, that is, that the IRS lien is so indivisible in nature that a Bankruptcy Court cannot strip it off real property that has no equity value while allowing it to remain on personalty that does have value." Id. The court ultimately authorized strip off of the IRS's lien from the residence.[7] Id. at 181.

While Hoesktra and Johnson focused on the nature of the IRS lien, this Court is more interested in the nature of its claim. Under § 506(d) the question is whether the IRS's lien "secures a claim against the debtor that is not an allowed secured claim." 11 U.S.C. § 506(d) (emphasis added). A "claim" is defined not by the existence and extent of collateral but by the existence and extent of debt. 11 U.S.C. § 101(5)(A). Although the IRS did not file a proof of claim, Debtors' schedules list the IRS as the holder of a single priority claim.[8] That claim is either an allowed secured claim for purposes of § 506(d) or it is not. There is no basis to divide the claim into separate claims for each type of collateral–i.e., one claim secured by the real property and a second claim secured by the personal property–which would then be independently analyzed to determine whether they are allowed secured claims.

---

[7] In affirming Johnson, the district court concluded that strip off was authorized by § 1123(b)(5). 415 B.R. at 169. It did not discuss the rationale of Hoekstra, but dismissed that case as distinguishable because it involved a Chapter 7 debtor. Id.

[8] Exhibit B to Debtors' complaint is a copy of the IRS notice of federal tax lien, which shows the IRS debt is based on four years of unpaid federal income taxes.

The IRS holds one claim. As long as the claim can attach to some value, it is "secured" for purposes of § 506(d). Here the IRS's claim does attach to value in the personal property. Therefore the IRS's single claim is an "allowed[9] secured claim" under § 506(d). As a result, Dewsnup rather than McNeal applies to these facts, and no portion of the IRS lien can be avoided. Accordingly, the Court will deny Debtor's motion for summary judgment, grant the IRS's motion for summary judgment, and enter judgment for the IRS.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT

---

[9] The lack of a proof of claim filed by the IRS does not prevent its claim from being an allowed claim for purposes of § 506(d). See 11 U.S.C. § 506(d)(2).